FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

APR 13 2010

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

| | |
|---|---|
| A.W. a minor, by and through her next friend, Stephanie Wright; and STEPHANIE WRIGHT, | Case No. **4 • 1 0 - CV - 0240** BSM |
| Plaintiffs, | **VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| v. | |
| PULASKI COUNTY SPECIAL SCHOOL DISTRICT; ROB MCGILL, Acting Superintendent of Pulaski County Special School District, in his official capacity; RHONDA HARNISH, Director of Elementary Education of Pulaski County Special School District, in her official capacity; and JOSIE BRAZIL, Principal of Sherwood Elementary School, in her official capacity; | This case assigned to District Judge _Miller_ and to Magistrate Judge _Young_ |
| Defendants. | |

Now come Plaintiffs, A.W., by and through her next friend, Stephanie Wright[1], and

Stephanie Wright, pursuant to the Federal Rules of Civil Procedure, and for their causes of action

against Defendants aver the following:

I.    **INTRODUCTION**

1.    This is a civil rights action under 42 U.S.C. § 1983, the First Amendment, and the Fourteenth

Amendment brought to remedy a violation of the constitutional rights of A.W., a student at

Sherwood Elementary School in Sherwood, Arkansas, and of Stephanie Wright, parent of

A.W.

2.    Plaintiffs bring this action challenging Defendants' censorship of Plaintiffs' religious flyer

---

[1]   Pursuant to Fed. R. Civ. P. 5.2, A.W. is identified by her initials, rather than her full name.

inviting students to a swimming event sponsored by Plaintiffs' church.

3.    Defendants prohibited Plaintiffs' flyer solely because of the religious nature of the message pursuant to several unconstitutional policies.

4.    Defendants, by policy and practice, permit students to distribute flyers which include invitations to, among other things, birthday parties, end of year parties, etc.

5.    Defendants, by policy and practice, permit community groups to distribute flyers which are sent home in a folder with students and which are displayed at a literature distribution rack at the school.

6.    The flyers distributed by community groups include information concerning, among other things, 4-H Club, Boy Scouts, Girl Scouts, local youth sports teams, karate lessons, gymnastics and dance groups, various summer camps, book sales, consignment sales, computer sales, and PTA fundraisers at local restaurants.

7.    Defendants have, by practice and policy, prohibited the Plaintiffs from distributing their religious flyers at Sherwood Elementary School.

8.    Article V, Section M.2 of the Pulaski County Special School District Handbook for Student Conduct and Discipline ("Handbook"), which specifically governs "Written Expression" by students, states:

> Students have the right to distribute or post-printed [sic] material (pamphlets, posters, leaflets, newspapers, brochures, circulars and petitions) subject to individual building procedures and accordance [sic] with Board of Education policies.

> Principals have the responsibility to see that Board of Education policies are adhered to and to develop and make available the building procedures for preparation and distribution of written materials.

9.    Policy KHA/KHB, "Public Solicitation/Advertising in the Schools," states:

The Board directs schools to avoid exploiting students and employees whether by advertising or otherwise promoting products or services, soliciting funds or information, or securing participation in non-school related activities and functions. At the same time, schools should inform and assist students and employees to learn about programs, activities or information which may be of help or service to them.

Therefore, the principal may approve bulletins announcing programs or services by a nonprofit local agency or  charitable organizations that are operated on a nationwide basis.

Materials soliciting money or information may not be distributed without approval of the Superintendent unless the materials are a part of the school's sanctioned fundraising activities.

10.     Finally, Policy KHC, "Distribution/Posting of Promotional Materials," states "Special interest materials submitted for grade level, school-wide or District-wide circulation are not to be distributed to students, used in classrooms or sent to homes unless authorized by the Superintendent."

11.     Plaintiffs challenge Article V, Section M.2 of the Handbook, Policy KHA/KHB, and Policy KHC (collectively the "Policies") both on their face and as-applied to their flyer.

12.     Defendants' censorship of Plaintiffs' religious speech, and the Policies on which that censorship was based, violate the First and Fourteenth Amendments to the United States Constitution.

## II.     JURISDICTION AND VENUE

13.     This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, under federal law, particularly 28 U.S.C. §§ 2201, 2202, 42 U.S.C. §§ 1983 and 1988.

14.     This Court possesses original jurisdiction over Plaintiffs' claims by operation of 28 U.S.C. §§ 1331 and 1343.

15.     This Court is vested with authority to issue the requested declaratory relief under 28 U.S.C.

§ 2201 and 2202, and pursuant to Rule 57 of the Federal Rules of Civil Procedure.

16.    This Court has authority to award the requested injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1343(3).

17.    This Court is authorized to award nominal damages under 28 U.S.C. § 1343(4).

18.    This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

19.    Venue is proper under 28 U.S.C. § 1391 in the Eastern District of Arkansas because this claim arose there and because, upon information and belief, all Defendants reside within the Eastern District of Arkansas.

## III.   IDENTIFICATION OF THE PLAINTIFFS

20.    Plaintiff A.W., a minor, is a student at Sherwood Elementary School, and at all times relevant to this Complaint, a resident of Sherwood, Arkansas.

21.    Plaintiff Stephanie Wright, individually and as next friend, is A.W.'s parent and guardian, and at all time relevant to this Complaint, is and was a resident of Sherwood, Arkansas.

22.    A.W. and Mrs. Wright desire to distribute religious literature, specifically flyers inviting children and their parents to community-wide events sponsored by Plaintiffs' church, at Defendants' schools without facing censorship or punishment.

23.    A.W. is an adherent of the Christian faith and desires to share her religious views with her classmates.

24.    Mrs. Wright is an adherent of the Christian faith and desires to share her religious views to A.W.'s friends' and classmates' parents.

25.    A.W., pursuant to her sincerely held religious beliefs, desires to hand out flyers to her friends and classmates inviting them to community-wide events sponsored by A.W.'s church.

26.    Both A.W. and Mrs. Wright, pursuant to their sincerely held religious beliefs, desire to send

other church flyers home with students in Defendants' schools via full access to Defendants' take-home flyer forum and literature distribution rack forum.

27.     Both A.W. and Mrs. Wright desire to distribute other flyers and materials with similar religious messages at Defendants' schools.

28.     Both A.W. and Mrs. Wright desire to distribute religious flyers and materials to students attending Defendants' schools for the same reason other community groups desire to have their flyers distributed – to let parents know about upcoming church meetings and activities so that they may make an informed decision as to whether their child can participate.

## IV.     IDENTIFICATION OF THE DEFENDANTS

29.     Defendant Pulaski County Special School District ("District") is organized under the laws of the State of Arkansas and may sue and be sued.

30.     The District is charged, inter alia, with the administration, operation, and supervision of Sherwood Elementary School, a public primary school.

31.     The District is charged with the formulation, adoption, implementation, and enforcement of District policies, including those challenged herein.

32.     The District is responsible for the enforcement of its policies by its employees.

33.     The District is responsible for the enactment, enforcement, and existence of policies and practices related to student speech and student publications.

34.     The District is responsible for the enactment, enforcement, and existence of policies and practices related to access by students, community groups, businesses, and public entities to the flyer forum, in which elementary students take home approved flyers to their parents distributed by students, community groups, businesses, and public entities, and to the literature distribution rack forum, in which flyers from students, community groups,

business, and public entities are displayed in a rack provided by the school.

35. The District prohibited A.W. from distributing flyers to her friends and classmates at school during non-instructional time pursuant to its policy and practice, through implementation by its legal counsel, and otherwise.

36. The District excluded A.W. and Mrs. Wright from the take-home flyer forum and the literature distribution rack forum pursuant to its Policies and practices, through implementation by its legal counsel, and otherwise.

37. The District is responsible for the implementation and application by the Superintendent, District officials, and local principals of its Policies and practices pertaining to distribution of written materials by students and access to its take-home flyer forum and literature distribution rack forum.

38. The District is similarly responsible for delegating to the Superintendent, District officials, and local principals final authority as to the approval and denial of the distribution of flyers by students, community groups, businesses, and public entities, and for the denial of Plaintiffs' flyers.

39. Defendant Rob McGill is the Superintendent of the Pulaski County Special School District.

40. Defendant McGill possesses responsibility, final authority, and discretion, as delegated by the District, as to administration of District Policies as they relate to the distribution of written materials by students during non-instructional time at District schools.

41. Defendant McGill also possesses responsibility, final authority, and discretion, as delegated by the District, as to administration of District Policies as they relate to the District's take-home flyer forum and the literature distribution rack forum.

42. Defendant McGill is responsible for the Policies and practice leading to the denial of A.W.'s

request to distribute flyers to her friends and classmates during non-instructional time.

43. Defendant McGill is responsible for the Policies and practices leading to the denial of access to the take-home flyer forum and the literature distribution rack forum to the Plaintiffs, as well as for the denial itself.

44. Defendant McGill denied A.W.'s request to distribute flyers to her friends and classmates during non-instructional time, pursuant to the District's Policies and practices.

45. Defendant McGill denied Plaintiffs access to the take-home flyer forum and the literature distribution rack forum pursuant to the District's Policies and practices.

46. Defendant McGill is sued in his official capacity.

47. Defendant Rhonda Harnish is the Director of Elementary Education for the Pulaski County Special School District.

48. Defendant Harnish possesses responsibility, authority, and discretion, as delegated by the District, as to administration of District Policies.

49. Defendant Harnish also possesses responsibility, authority, and discretion, as delegated by the District, as they relate to the District's take-home flyer forum and the literature distribution rack forum.

50. Defendant Harnish is responsible for the Policies and practice leading to the denial of access to the take-home flyer forum and the literature distribution rack forum to the Plaintiffs, as well as for the denial itself.

51. Defendant Harnish denied Plaintiffs access to the take-home flyer forum and the literature distribution rack forum pursuant to the District's Policies and practices.

52. Defendant Harnish is sued in her official capacity.

53. Defendant Josie Brazil is the Principal of the Sherwood Elementary School.

54.   Defendant Brazil possesses responsibility, final authority, and discretion, as delegated by the District, as to administration of District Policies.

55.   Defendant Brazil also possesses responsibility, final authority, and discretion, as delegated by the District, as to administration of District Policies as they relate to the District's take-home flyer forum and the literature distribution rack forum.

56.   Defendant Brazil is responsible for the Policies and practice leading to the denial of access to the take-home flyer forum and the literature distribution rack forum to the Plaintiffs, as well as for the denial itself.

57.   Defendant Brazil denied Plaintiffs access to the take-home flyer forum and the literature distribution rack forum pursuant to the District's Policies and practices.

58.   Defendant Brazil is sued in her official capacity.

V.    **ALLEGATIONS OF FACT**

59.   Sherwood Elementary School ("Sherwood") is a public elementary school located in Sherwood, Arkansas.

60.   Sherwood is under the direction of the District and includes kindergarten through fifth grade.

61.   The District is the official policy maker and as such has enacted the Policies challenged herein.

62.   Defendants permit students and community groups to distribute literature and materials pursuant to the Policies.

63.   Pursuant to Article V, Section M.2 of the Handbook, which specifically governs "Written Expression" by students,

> Students have the right to distribute or post-printed [sic] material (pamphlets, posters, leaflets, newspapers, brochures, circulars and petitions) subject to individual building procedures and accordance [sic] with Board of Education policies.

Principals have the responsibility to see that Board of Education policies are adhered to and to develop and make available the building procedures for preparation and distribution of written materials.

64.    Pursuant to Policy KHA/KHB, "Public Solicitation/Advertising in the Schools,"

The Board directs schools to avoid exploiting students and employees whether by advertising or otherwise promoting products or services, soliciting funds or information, or securing participation in non-school related activities and functions. At the same time, schools should inform and assist students and employees to learn about programs, activities or information which may be of help or service to them.

Therefore, the principal may approve bulletins announcing programs or services by a nonprofit local agency or charitable organizations that are operated on a nationwide basis.

Materials soliciting money or information may not be distributed without approval of the Superintendent unless the materials are a part of the school's sanctioned fundraising activities.

65.    Finally, Pursuant to Policy KHC, "Distribution/Posting of Promotional Materials," "Special interest materials submitted for grade level, school-wide or District-wide circulation are not to be distributed to students, used in classrooms or sent to homes unless authorized by the Superintendent."

66.    Defendants permit a broad range of community groups, businesses and public entities to send home with students informational flyers about upcoming group meetings, activities or business advertisements through a take-home flyer forum.

67.    Defendants also permit a broad range of community groups, businesses and public entities to post informational flyers about upcoming group meetings, activities or business advertisements in a literature distribution rack at Defendants' schools.

68.    Students distribute literature and materials with all types of messages promoting clubs, birthday invitations, end of year party invitations, etc.

69. In addition, local community groups, businesses, and public entities regularly distribute literature and materials with all types of messages promoting spring and summer camps, fundraisers, book sales, extracurricular clubs, consignment sales, computer sales, etc.

70. In October 2009, Mrs. Wright contacted A.W.'s teacher to ask if A.W. could distribute flyers to A.W.'s friends and classmates through the take-home folders for each of the students in A.W.'s class and through the literature distribution rack at Sherwood.

71. The flyers advertised a swimming event on November 14, 2009 sponsored by the Wrights' church, at which children and their parents would swim at a local public pool, spend time with their friends, enjoy refreshments provided by the church, be invited to attend the church, and receive information about the church.

72. The flyer provided a brief description of the event, the date, the time, and the location.

73. A.W.'s teacher told Mrs. Wright that Mrs. Wright would need to obtain permission from Defendant Brazil in order to include the flyers in the take-home folder and in the literature distribution rack.

74. Mrs. Wright contacted Defendant Brazil and provided her with the flyer that A.W. and Mrs. Wright desired to distribute to promote the community event.

75. The Wrights waited and did not hear any response from Defendant Brazil.

76. Finally, after waiting for two weeks, Defendant Brazil denied Mrs. Wright's and A.W.'s request to distribute the flyers in any manner at the school.

77. Defendant Brazil told the Wrights that the flyers could not be distributed because they were "church related."

78. Defendant Brazil stated that Defendant Harnish, the Director of Elementary Education, made the decision to deny A.W.'s and Mrs. Wright's request to distribute the flyers at Sherwood

based upon the District's policies.

79.   Mrs. Wright then attempted to contact Defendant Harnish to further discuss the denial of their request to distribute the flyers.

80.   After again being ignored for over a week, Mrs. Wright finally was able to speak with Defendant Harnish.

81.   Defendant Harnish affirmed that she denied the Wrights' request to distribute the flyers based on the District's policies because the flyers were "church related."

82.   Mrs. Wright then contacted her local school board representative who, after agreeing with the decisions of Defendants Brazil and Harnish, put Mrs. Wright in touch with Defendant McGill, Superintendent of the District, to discuss the matter further.

83.   Defendant McGill contacted Mrs. Wright and confirmed that neither Mrs. Wright nor A.W. was allowed to distribute the flyers through the take-home folders or have them displayed in the literature distribution rack.

84.   Mrs. Wright then asked if A.W. could simply hand out the flyers to her friends and classmates during free time.

85.   Defendant McGill responded that if A.W. attempted to hand out the flyers on her own, she would be immediately stopped by school officials.

86.   On February 4, 2010, the Wrights' legal counsel sent a public records request pursuant to the Arkansas Freedom of Information Act of 1967 requesting (1) all policies that relate to student speech or literature distribution, (2) all policies relating to school and/or community literature distribution, and (3) copies of all school and/or community flyers that have been sent home with students in their take-home folders or otherwise displayed or distributed by at the District's schools.

87. In response, the Defendants' counsel identified Board Policy KHA/KHB as the policy upon which the Defendants' based their decision to deny the Plaintiffs' request to distribute the flyers.

88. Defendants' did not provide copies of the flyers that have been distributed to students in the District.

89. The Wrights' legal counsel sent two additional letters dated February 22, 2010 and March 4, 2010 again requesting (1) all policies that relate to student speech or literature distribution, and (2) copies of all school and/or community flyers that have been sent home with students in their take-home folders or otherwise displayed or distributed by at the District's schools as had been requested under the Arkansas Freedom of Information Act of 1967 in the previous letter from the Wrights' legal counsel.

90. The Defendants continue to violate the law by ignoring both of these letters and by never providing the information requested by the Wrights' in their public records request.

91. A.W. is a Bible-believing Christian who desires to share her faith and beliefs with other students and to invite them to church events.

92. A.W.'s sincerely held religious beliefs compel her to share her faith and beliefs with her friends and classmates at school.

93. One way A.W. accomplishes this goal at school is through inviting her friends to events at her church.

94. In the future, A.W. desires to engage in religious speech through the distribution of religious literature, including flyers inviting her friends and classmates to community-wide events sponsored by her church, absent fear of reprisal and without facing punishment or being prohibited from doing so.

95.     Mrs. Wright is also a Bible-believing Christian who desires to share her faith and beliefs with parents and students in her daughter's classes and to invite them to community-wide church events with permission from their parents.

96.     Mrs. Wright's sincerely held religious beliefs compel her to share her faith and beliefs with parents of her daughter's friends and classmates at school.

97.     On behalf of her church, Mrs. Wright accomplishes this goal at her daughter's school through inviting parents and their children to community-wide events sponsored by her church.

98.     In the future, Mrs. Wright desires to engage in religious speech through the distribution of religious literature on behalf of her church, including flyers inviting A.W.'s friends and classmates along with their families to future church events that are currently being planned by the church, without being prohibited from distributing her message.

## VI.   ALLEGATIONS OF LAW

99.     Students do not shed their constitutional rights at the schoolhouse gate.

100.    Non-disruptive, private student expression is protected by the First Amendment.

101.    Private speakers are entitled to equal, viewpoint neutral access to public fora.

102.    Religious speech is fully protected by the First Amendment.

103.    Prior restraints on speech may not delegate overly broad discretion to government decision-makers, may not allow for content based restrictions, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication.

104.    The government may not discriminate against speech based on its viewpoint, regardless of the forum.

105.   Content-based restrictions on speech in a public forum are presumptively unconstitutional and are subject to strict scrutiny.

106.   Time, place, and manner restrictions on speech must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

107.   All of the acts of Defendants, their officers, agents, employees, and servants were executed and are continuing to be executed by the Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Arkansas.

108.   Plaintiffs are suffering irreparable harm from the conduct of Defendants.

109.   Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

110.   Unless Defendants' Policies are enjoined, Plaintiffs will continue to suffer irreparable injury.

111.   Plaintiffs' church continues to hold events and activities and Plaintiffs desire to share this information through flyers and literature distribution immediately.

## FIRST CAUSE OF ACTION: VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

112.   Plaintiffs re-allege and incorporate herein, as though fully set forth, Paragraphs 1 through 111 of this Complaint.

113.   The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits censorship of religious expression.

114.   Defendants' Policies and practice permit students to distribute literature, permit community groups, businesses, and public entities to distribute literature through a take-home flyer forum, and permit community groups, businesses, and public entities to distribute literature

through a literature distribution rack at Sherwood.

115. Through its creation of these public fora and the attendant access given to the above mentioned groups and others, Defendants permit the distribution of flyers to students and parents that promote recreational, cultural, community, charitable, and educational activities.

116. Plaintiffs proposed flyers promote similar recreational, cultural, charitable, community, and educational activities, albeit from a religious perspective, but Plaintiffs are barred from distributing their flyers.

117. Defendants permit the distribution of flyers covering a wide range of topics including birthday invitations, end of year parties, summer camps, computer, book sales, consignment sales, computer sales, and PTA fundraisers at local restaurants.

118. In contrast, Defendants' Policies and practice prohibit A.W. and Mrs. Wright from distributing a flyer for a religious event.

119. This unequal treatment of A.W.'s and Mrs. Wright's religious expression is a content-based restriction in otherwise open fora.

120. Defendants permit the community groups such as the Boy Scouts, Girls Scouts, youth sports teams, dance teams, gymnastic teams, computer companies, etc. to distribute flyers.

121. In contrast, Defendants' Policies and practice prohibit A.W. and Mrs. Wright from distributing a religious flyer because said flyer was "church related."

122. Similarly, Defendants permit the 4-H Club to distribute a flyer advertising a Spring Break Family Camp scheduled for March 26-28, 2010 where families spend time camping, cooking in the outdoors, canoeing, meeting other families, etc.

123. In contrast, Defendants' Policies and practice discriminate against A.W.'s and Mrs. Wright's religious viewpoint by prohibiting them from distributing a religious flyer about a

15

community-wide swimming event sponsored by their church where families would spend time eating, swimming, meeting other families, receiving invitations to and information about the church, etc.

124.  This denial of A.W.'s and Mrs. Wright's religious speech promoting a community-event for families because it is "church related," while permitting similar speech from other organizations advertising a community-event for families, also constitutes viewpoint discrimination, which is unconstitutional in any type of forum.

125.  A.W.'s religious expression on campus does not materially and substantially interfere with the orderly conduct of educational activity within the school.

126.  Defendants' Policies and practice additionally impose an unconstitutional prior restraint because they vest District officials with unbridled discretion to permit or refuse protected religious speech by students.

127.  Article V, Section M.2 of the Handbook gives unbridled discretion to the principals to refuse protected religious speech because it states that student distribution of printed materials are subject to "individual building procedures" established by the principals.

128.  Defendants' Policies and practice also allow District officials to act with unbridled discretion when deciding whether to allow the distribution of materials from community groups.

129.  Policy KHA/KHB states that "the principal may approve bulletins announcing programs or services by a nonprofit local agency or charitable organizations that are operated on a nationwide basis."

130.  Policy KHA/KHB further provides that "[m]aterials soliciting money or information may not be distributed without approval of the Superintendent . . . ."

131.  Policy KHC states that special interest materials (a term that is not defined) may not be

distributed "<u>unless authorized by the Superintendent.</u>"

132. These policies, both on their face and as applied, give District officials, including the principal and superintendent, unbridled discretion to prohibit certain community groups from distributing flyers in the take-home flyer forum and literature distribution rack forum while allowing other community groups to have access to these fora.

133. None of the policies contain any specific guidelines or restrictions as to when District officials may ban or prohibit literature distribution by students or community groups.

134. Defendants' Policies subject all flyer distribution by both students and community groups to the unbridled discretion of District officials and do not contain any guidelines or procedures to restrict the discretion of the District officials.

135. Defendants' Policies and practice are additionally overbroad because they sweep within their ambit protected First Amendment expression.

136. The overbreadth of Defendants' Policies and practice chill the speech of students and third parties who might seek to engage in private religious expression through the distribution of flyers during non-instructional time, through the take-home flyer forum, and through the literature distribution rack forum.

137. Defendants' Policies and practice chill, deter, and restrict Plaintiffs from freely expressing their religious beliefs.

138. Defendants' Policies, as interpreted and applied by them to prohibit religious speech, are not the least restrictive means necessary to serve any compelling interest which Defendants seek thereby to secure.

139. Defendants' Policies and practice are not reasonably related to any legitimate pedagogical concerns.

140.   Censoring students' and community groups' religious speech per se is not and cannot be a legitimate pedagogical concern.

141.   Defendants' Policies and practice, both facially and as applied, accordingly violate Plaintiffs' right to Free Speech as guaranteed by the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## SECOND CAUSE OF ACTION: VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

142.   Plaintiffs re-allege and incorporate herein, as though fully set forth, Paragraphs 1 through 111 of this Complaint.

143.   Defendants' Policies and practice, by expressly targeting A.W.'s and Mrs. Wright's private religious expression for special disabilities because it is "church related," violate their constitutional right to the free exercise of religion.

144.   A.W. and Mrs. Wright desire to engage in expressive activities described above on the basis of their sincerely held religious beliefs.

145.   Defendants' Policies and practice explicitly exclude – and thus discriminate against – religious expression.

146.   Defendants' Policies and practice substantially burden A.W.'s and Mrs. Wright's free exercise of religion by conditioning their ability to speak on foregoing their free exercise rights.

147.   Defendants' Policies and practice force A.W. and Mrs. Wright to choose between engaging in religious speech and being censored, or foregoing the free exercise of religion to be able to speak without censorship or punishment.

148.   Defendants' Policies and practice substantially burden A.W.'s and Mrs. Wright's free

exercise of religion by denying them the right to include private religious speech in the fora.

149. Defendants' Policies and practice constitute the imposition of special disabilities on A.W. and Mrs. Wright due to their religion and their intent to include private religious expression in the fora.

150. These special disabilities placed on Plaintiffs are neither neutral nor of general applicability.

151. Defendants' Policies and practice of banning A.W.'s and Mrs. Wright's religious flyer selectively imposes a burden on expression based on the religious nature of the expression by singling out their expression for discriminatory treatment.

152. Defendants' Policies and practice cannot be justified by a compelling governmental interest and are not narrowly tailored to advance any such interest.

153. Defendants' interpretation and application of their Policies chill A.W.'s and Mrs. Wright's freedom of religious expression and exercise, both of which are fundamental rights guaranteed to Plaintiffs by the First Amendment.

154. Defendants' Policies and practice, both facially and as applied, constitute an excessive burden on A.W.'s and Mrs. Wright's rights to freedom of exercise of their religion and have violated the Free Exercise Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## THIRD CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

155. Plaintiffs re-allege and incorporate herein, as though fully set forth, Paragraphs 1 through 111 of this Complaint.

156. The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague or overbroad standards that grant unbridled discretion.

157.   The determination by Defendants of what is and is not forbidden religious speech violates this norm.

158.   Defendants' Policies and practice are vague and allow for unbridled discretion in determining which student and community group speech satisfies their Policies.

159.   Defendants' Polices lack any guidelines or directives to guide the decisions of District officials when approving flyers and other literature sought to be distributed by students and community groups.

160.   Article V, Section M.2 states that the principals may establish "individual building procedures" to limit student speech, but it does not contain any guidelines to restrict District officials from censoring student speech.

161.   Similarly, Policy KHA/KHB states that "the principal may approve bulletins announcing programs or services by a nonprofit local agency or charitable organizations that are operated on a nationwide basis," and that "[m]aterials soliciting money or information may not be distributed without approval of the Superintendent," but lacks any guidelines for approval of these materials by the principal or superintendent.

162.   Policy KHC provides that "Special interest materials . . . are not to be distributed to students, used in classrooms or sent to homes unless authorized by the Superintendent," yet it also lacks any guidelines for when the Superintendent is authorized to approve these materials.

163.   The discretion given to District officials in Defendants' Policies leave censorship of student speech and community group speech to the whim of Defendants.

164.   Defendants' Policies and practice, both facially and as applied, accordingly violate Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## FOURTH CAUSE OF ACTION: VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

165. Plaintiffs re-allege and incorporate herein, as though fully set forth, Paragraphs 1 through 111 of this Complaint.

166. Defendants' Policies and practice embody hostility toward religious expression and require excessive entanglement with religion, both forbidden under the First Amendment's Establishment Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution.

167. Defendants' Policies and practice of banning A.W.'s and Mrs. Wright's religious expression evinces discriminatory suppression of private speech that is not neutral, but rather is hostile toward religion.

168. Defendants, pursuant to their Policies and practice of suppressing any private Christian religious expression sends the message to students and community groups that religious speakers such as A.W. and Mrs. Wright are second-class citizens, outsiders, and not full members of the academic community.

169. Defendants send the message that Christians like A.W. and Mrs. Wright are outsiders by excluding religious points of view and events while concurrently permitting all other points of view and events.

170. Defendants' Policies and practice compel District officials to classify private student and community group speech according to their perceived religious-versus-nonreligious nature.

171. Drawing this distinction necessarily requires District officials to inquire into the significance of words and practices to different religious faiths.

172.   Such inquiries by District officials entangle it with religion in a manner forbidden by the First Amendment.

173.   Entanglement problems exist because District officials must attempt to discern which private student and community group expression is too religious in nature to be permitted.

174.   District officials must make theological interpretations in order to conclude that some student and community group speech is or religious, while other student speech is not.

175.   Defendants denied A.W. and Mrs. Wright the right to distribute their religious flyer because it was "church-related" and contained a religious point of view, actions that represent the antithesis of neutrality.

176.   No compelling state interest exists to justify the censorship of A.W.'s and Mrs. Wright's religious expression.

177.   Defendants' Policies and practice therefore violate the Establishment Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## FIFTH CAUSE OF ACTION: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

178.   Plaintiffs re-allege and incorporate herein, as though fully set forth, Paragraphs 1 through 111 of this Complaint.

179.   The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons and groups equally.

180.   Pursuant to their Policies and practice, Defendants have allowed other similarly situated students and community groups to access the fora with secular expression.

181.   Defendants have treated A.W. disparately when compared to similarly situated students by

banning only A.W.'s religious expression.

182. Defendants have treated Mrs. Wright disparately when compared to similarly situated community groups by banning only Mrs. Wright's and religious expression on behalf of Plaintiffs' church.

183. By discriminating against the content and viewpoint of A.W.'s and Mrs. Wright's speech, Defendants are treating A.W.'s and Mrs. Wright's religious speech differently than other similar situated public school students and private community groups.

184. Defendants' Policies and practice violate various fundamental rights of A.W. and Mrs. Wright, such as rights of free speech and free exercise of religion.

185. When government regulations, like Defendants' Policies and practice challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

186. Defendants' Policies and practice have also in fact, and in practice, been applied to intentionally discriminate against A.W.'s and Mrs. Wright's rights of free speech and free exercise of religion.

187. Defendants lack a rational or compelling state interest for such disparate treatment of A.W. and Mrs. Wright.

188. Defendants' denial of access to A.W. and Mrs. Wright is not narrowly tailored in that they restrict students' and community groups' private religious expression unrelated to any asserted interest Defendants may have.

189. Defendants' Policies and practice are not narrowly tailored as applied to A.W. and Mrs. Wright because their speech does not implicate any of the interests Defendants might have.

190. Defendants' Policies and practice are overinclusive because they prohibit A.W.'s and Mrs. Wright's religious expression even though it is not disruptive.

191.   Defendants' Policies and practice burden more of A.W.'s and Mrs. Wright's speech than

necessary because they are foreclosed from using religious content and viewpoints in their

speech even though it is not disruptive.

192.   The Policies and practice of Defendants, both facially and as applied, thus violate A.W.'s and

Mrs. Wright's right to equal protection of the laws as guaranteed by the Fourteenth

Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter

in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgement as follows:

a.   That this Court issue a Preliminary and Permanent Injunction, restraining Defendants,

their officers, agents, employees, and all other persons acting in active concert with it,

from enforcing the Policies challenged herein that violate A.W.'s and Stephanie

Wright's constitutional rights by banning religious expression, immediately allowing

A.W. to distribute religious flyers to her friends and classmates during non-

instructional time, and allowing A.W. and Stephanie Wright to distribute religious

flyers through the take-home flyer forum and the literature distribution rack forum.

b.   That this Court render a Declaratory Judgment, declaring as unconstitutional facially

and as-applied the District's Policies and practice challenged herein that ban religious

expression in violation of the First and Fourteenth Amendments to the United States

Constitution;

c.   That this Court adjudge, decree, and declare the rights and other legal relations of the

parties to the subject matter here in controversy, in order that such declarations shall

24

have the force and effect of final judgment;

d.   That this Court retain jurisdiction of this matter for the purpose of enforcing any

Orders;

e.   That the Court award A.W.'s and Stephanie Wright's costs and expenses of this action,

including a reasonable attorney's fees award, in accordance with 42 U.S.C. § 1988.

f.   That this Court award nominal damages for the violation of A.W.'s and Stephanie

Wright's constitutional rights;

g.   That this Court issue the requested injunctive relief without a condition of bond or

other security being required of A.W. or Stephanie Wright; and

h.   That the Court grant such other and further relief as the Court deems equitable and just

in the circumstances.

Dated this 12th day of April, 2010.

DAVID A. CORTMAN                         J. PAUL DAVIDSON
GA 188810                                AR 2006291
ALLIANCE DEFENSE FUND                    DAVIDSON LAW FIRM, LTD.
1000 Hurricane Shoals Road NE, Suite D600   P.O. Box 1300
Lawrenceville, GA 30043                  Little Rock, AR 72203
Telephone: (770) 339-0774                Telephone: (501) 320-5103
Facsimile: (770) 339-6744                Facsimile: (501) 374-5917
dcortman@telladf.org                     pauld@dlf-ar.com

*Attorneys for Plaintiff A.W. and Stephanie Wright*

## VERIFICATION

I, Stephanie Wright,  a citizen of the United States and a resident of the State of Arkansas, have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this _____9th_____ day of ___April___, 20_10_, in Sherwood, Arkansas.

Stephanie Wright